## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jakob Tiarnan Rumble,<br><br>   Plaintiff,<br><br>v.<br><br>Fairview Health Services d/b/a/ Fairview Southdale Hospital, and Emergency Physicians, P.A.,<br><br>   Defendants. | Case No. 14-cv-2037 (SRN/FLN)<br><br>**ORDER** |

Katherine S. Barrett Wiik, Lindsey W. Lee, and Lisa L. Beane, Robins Kaplan LLP, 800 LaSalle Ave., Ste. 2800, Minneapolis, MN 55402; Christy L. Hall, Jill R. Gaulding, and Lisa C. Stratton, Gender Justice, 550 Rice St., Ste. 105, St. Paul, MN 55103, for Plaintiff.

Jessica M. Marsh, Sara Gullickson McGrane, and Scott D. Blake, Felhaber Larson, 220 South 6th St., Ste. 2200, Minneapolis, MN 55402, counsel for Defendant Fairview Health Services.

Jessica L. Roe and Shannon N.L. Cooper, Roe Law Group, PLLC, 60 South 6th St., Ste. 2670, Minneapolis, MN 55402; Chad W. Strathman, Emergency Physicians P.A., 5435 Feltl Road, Minnetonka, MN 55343, for Defendant Emergency Physicians, P.A.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff's Objections [Doc. No. 106] to Magistrate Judge Noel's Order dated May 18, 2016 ("May 18 Order") [Doc. No. 105]. Defendant Fairview Health Services ("Fairview") filed a Memorandum in Opposition to Plaintiff's Objections [Doc. No. 110]. Previously, this Court overruled Plaintiff's Objections in part, affirmed portions of the May 18 Order, and deferred ruling on Plaintiff's other objections until after it could conduct an *in camera* review of certain

documents. (See Order dated July 26, 2016 ("July 26 Order") at 20–21 [Doc. No. 114].) With the benefit of that review, the Court now sustains Plaintiff's remaining objections and respectfully reverses in part the May 18 Order.

**I.     BACKGROUND**

The facts and procedural history of this matter were set forth at length in the July 26 Order and the Court recounts them here only briefly, citing to the July 26 Order for the sake of efficiency.

Plaintiff Jakob Rumble ("Rumble") is a transgender man who sought healthcare treatment from Fairview and Emergency Physicians, P.A. ("EPPA"). (July 26 Order at 2.) Rumble alleges that his caregivers in the course of his healthcare treatment, rendered poor care and subjected him to unnecessary trauma on the basis of his gender identity. (Id.) Before bringing the instant suit, Rumble filed a complaint with the U.S. Department of Health and Human Services' Office for Civil Rights ("OCR"). (Id.) OCR investigated Rumble's claims and conducted interviews with several of Fairview's employees. (Id.) Bonnie Johnson ("Johnson"), an in-house attorney for Fairview, directed Eric Nelson ("Nelson"), Fairview's Director of Clinical Quality, to attend these interviews. (Id.) Nelson is not an attorney. (Id. at 2, n.1.) OCR selected which individuals were interviewed and what questions were asked—Fairview had no input in this process and Nelson played no part in the interviews. (Id. at 13–14.)

During the OCR interviews, Nelson took notes (the "Notes"). (Id. at 2.) Nelson does not remember whether Johnson instructed him to take the Notes, but also testified that he is generally a note-taker during meetings. (Id. at 7.) There is no indication in the

record that anyone told Nelson to take notes. Based on Nelson's deposition testimony, it was unclear exactly what the Notes contained. (Id. at 11.) Nelson testified he would at times record the questions asked by OCR and the interviewee's answer, but other times would summarize what was discussed, or took no notes at all. (Id.) Nelson said his purpose in taking the Notes was to "capture" anything that suggested Fairview was noncompliant with federal regulations, but also to get a "general sense of how the interviews were going" so he could understand the questioning and OCR's process. (Id.) Nelson did not ever share the Notes with Johnson or any other attorney prior to the present suit, but he did provide an "informal summary" of the OCR interviews to other Fairview staff. (Id. at 7–8.)

Rumble sought discovery of the Notes, but Fairview opposed those requests asserting that the Notes were protected work product. (Id. at 2.) Magistrate Judge Noel ("Judge Noel"), without the opportunity to review the Notes, held that they were protected opinion work product and thus not subject to production. (Id. at 3.) This Court affirmed Judge Noel's decision that the Notes were work product in general, but deferred ruling on whether the Notes were ordinary or opinion work product until after they could be reviewed *in camera*. (See id. at 5–19.)

Based on this review and for the reasons set forth below, the Court holds that the Notes are ordinary work product and must be produced because Rumble has demonstrated the requisite substantial need.

## II. DISCUSSION[1]

### A. Ordinary Versus Opinion Work Product

Rumble argues that the Notes are ordinary (sometimes referred to as "fact") work product because they do not reveal what any of Fairview's attorneys considered to be relevant or important to their defense against Rumble's discrimination claims (i.e. legal opinions). (July 26 Order at 8.) Instead, Rumble contends the Notes consist of discoverable facts regarding the OCR interviews, such as the questions asked and the answers given (i.e. facts). (See id.) Fairview claims that the Notes contain only opinion work product because Nelson suggested that he was listening for indications that Fairview was not complying with federal laws and because he summarized the questions and answers instead of recording them verbatim. (See id. at 8–9.)

> The distinction between ordinary and opinion work product is an important one:
>
> Ordinary work product includes raw factual information. Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (quotations and citations omitted). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts

---

[1] For a discussion of the work product doctrine generally, see this Court's prior order. (July 26 Order at 4–5.)

concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).

Notes taken by an attorney, or an attorney's agent, during a witness interview often qualify as opinion work product because "[a]ttorney notes reveal an attorney's legal conclusions because, when taking notes, an attorney often focuses on those facts that she deems legally significant. In this way, attorney notes are akin to an attorney's determination as to which documents are important to a case . . . ." Baker, 209 F.3d at 1054. However, "not every item which may reveal some inkling of a lawyer's mental impressions is protected as opinion work product. Opinion work product protection is warranted only if the selection or request reflects the attorney's focus in a meaningful way." F.T.C. v. Boehringer Ingelheim Pharm., Inc., 778 F.3d 142, 151 (D.C. Cir. 2015), reh'g denied (June 4, 2015), cert. denied, 136 S. Ct. 925 (2016) (quotations and citations omitted).

When a party looks to discover the underlying facts contained in a piece of work product, the challenge is determining whether the recording of those facts gives away an attorney's opinions or impressions. See Onwuka v. Fed. Express Corp., 178 F.R.D. 508, 512–13 (D. Minn. 1997) ("While the distinction is a fine one, it represents a tenable footing between unwarranted inquiries into the files and the mental impressions of an attorney, and the intolerable prospect that the work-product protections will be employed to shroud otherwise discoverable corporate affairs in a veil of secrecy." (quotations and citations omitted)); Boehringer Ingelheim Pharm., 778 F.3d at 151 ("When a factual document selected or requested by counsel exposes the attorney's thought processes and

5

theories, it may be appropriate to treat the document as opinion work product, even though the document on its face contains only facts."). "Where a document contains both opinion and fact work product, the court must examine whether the factual matter may be disclosed without revealing the attorney's mental impressions." United States v. All Assets Held at Bank Julius Baer & Co., Ltd., No. CV 04-798 (PLF/GMH), __F.R.D.__, 2016 WL 3149455, at *5 (D.D.C. June 3, 2016).

A review of Nelson's Notes reveals that they consist entirely of ordinary work product. The Notes contain summaries of the questions asked by OCR and the interviewees' answers. They do not contain any of Nelson's mental impressions or suggest that Nelson considered some questions or answers significant for any particular reason. The mere fact that Nelson summarized the questions and answers, and only recorded some of the exchanges, does not make the Notes opinion work product because this does not reflect an "attorney's focus in a meaningful way." Boehringer Ingelheim Pharm., 778 F.3d at 151; see United States ex rel. Landis v. Tailwind Sports Corp., 303 F.R.D. 429, 432 (D.D.C. 2014) (hereinafter, Tailwind Sports II) (holding that memoranda containing summaries of witness interviews conducted during a separate criminal investigation were not opinion work product because a relevant attorney "ha[d] not . . . sharply focused or weeded the content" of the memoranda or directed the interviews they documented).

To be opinion work product, the document in question must reveal an attorney's legal conclusions or mental impressions. See Baker, 209 F.3d at 1054; Onwuka, 178 F.R.D. at 512–13. The Notes make no such revelation. (See July 26 Order at 11–13

(using Tailwind Sports II to distinguish between opinion and ordinary work product under similar circumstances).) Nelson cannot remember whether an attorney instructed him to take notes and there is no indication he was told what he should take notes on. OCR "set the direction" of the interviews when it selected the interviewees and what questions would be asked. Nelson was merely a passive observer during these interviews. His Notes summarize some of the questions asked and the answers given, but offer no mental impressions or legal conclusions. Afterwards, Nelson did not share his Notes with any attorney. Under these circumstances, the Notes consist entirely of ordinary work product.

### B. Substantial Need

Rumble argues that he has a substantial need for Nelson's Notes. (See July 26 Order at 14.) Specifically, Rumble claims that since many of the individuals interviewed by OCR no longer remember what they said, or certain details about the care Rumble received, Fairview unfairly benefits by having exclusive access to Nelson's Notes, which contain some of that information. (See id. at 14–15.) Fairview contends that Rumble's "true motive" for the Notes is a "fishing expedition for impeachment evidence." (Id. at 15.)

Ordinary work product is only discoverable if the party seeking its disclosure shows a "substantial need for the materials and [that] the party cannot obtain the substantial equivalent of the materials by other means." Baker, 209 F.3d at 1054; see Fed. R. Civ. P. 26(b)(3)(A)(ii). Where a witness is available to be deposed, courts often hold that work product containing information about the witness' prior statements is not

discoverable because that information is available through other means (i.e., the party seeking the work product can depose the witness instead). See Nobles, 422 U.S. at 248 ("[W]here a party seeks to discover a statement made to an opposing party in order to prepare for trial, he can obtain the 'substantial equivalent . . . by other means,' i.e., by interviewing the witness himself." (quoting what is now Fed. R. Civ. P. 26(b)(3)(A)(ii)) (White, J. and Rehnquist, J. concurring)); Baker, 209 F.3d at 1054 ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party."); A.I.A. Holdings v. Lehman Bro., Inc., No. 97 CIV. 4978 (LMM), 2002 WL 31556382, at *7 (S.D.N.Y. Nov. 15, 2002) (where a witness had fled the jurisdiction but made himself available for a deposition overseas, party seeking discovery of work product could obtain the information by other means). However, the party seeking work product "can claim undue hardship if he cannot obtain the information he seeks by deposition. For instance, if the plaintiff makes a particularized showing that a witness cannot recall the event in question or is unavailable, this may constitute undue hardship." King v. Odeco Inc., 106 F.3d 396 (5th Cir. 1997) (citations omitted); see Gargano v. Metro-N., 222 F.R.D. 38, 40 (D. Conn. 2004) ("[S]ubstantial need may exist when a witness is not available for deposition by the requesting party, or the witness cannot remember facts that he had recalled and related to the claims agent but could not recall at the time of the deposition."); Advisory Committee Notes to the 1970 Amendments of Fed. R. Civ. P. 26(b)(3) (noting with approval cases holding that the discovery of witness statements contained in work product was appropriate where the witness could no longer remember the event); The Work–Product Rule—Showing Required for Discovery of

8

Work Product, 8 Fed. Prac. & Proc. Civ. § 2025 (3d ed.) ("No one doubts that production should be ordered if the witness has a faulty memory and no longer remembers details of the event." (collecting cases)).

A work product document's usefulness in impeaching a witness may also constitute a substantial need justifying its disclosure. Hickman v. Taylor, 329 U.S. 495, 511 (1947) (noting that the impeachment of a witness with statements contained in a privileged document might justify discovery); Advisory Committee Notes to the 1970 Amendments of Fed. R. Civ. P. 26(b)(3) (noting with approval cases holding that discovery of work product witness statements was appropriate where the witness may have deviated from his/her prior statements). However, courts are divided on when the impeachment of a witness constitutes a substantial need. Compare Fair Isaac Corp. v. Experian Info. Sols. Inc., No. 06-cv-4112 (ADM/JSM), 2009 WL 161247, at *2 (D. Minn. Jan. 22, 2009) (recognizing there is a substantial need where the party seeking discovery can show, beyond mere speculation, that the work product sought will contain "invaluable impeachment material") with McPeek v. Ashcroft, 202 F.R.D. 332, 339 (D.D.C. 2001) ("[I]f the desire to impeach a witness with prior inconsistent statements is a sufficient showing of substantial need, the work product privilege would cease to exist; there is not a lawyer born who would not like to see opposing counsel's files in order to search for inconsistencies in opposing witnesses' potential testimony.").

Rumble has the requisite substantial need to discover Nelson's Notes for at least two reasons. First, the Notes contain "witnesses' initial, unadorned testimony on the key issues," such as the care Rumble received at Fairview. See United States ex rel. Landis v.

9

Tailwind Sports Corp., 303 F.R.D. 419, 425–26 (D.D.C. 2014) (hereinafter, Tailwind Sports I).[2] Second, the Notes "reveal how the witnesses' testimony and recollections may have changed over time." Id. Thus, the Notes "are unique sources of both affirmative evidence and impeachment material for which there is no substitute." Id. at 426.

### C. Nelson's Testimony

Rumble also asks that Nelson be compelled to testify about his recollections of the OCR interviews. (July 26 Order at 19.) Fairview argues that if Nelson were required to so testify "he would necessarily reveal his mental impressions about the interviewees' statements and credibility." (Id.) Rumble's request is granted.

During this deposition, Nelson will *not* be required to testify about his impressions of any interviewee's credibility or his conclusions about what the OCR interviews meant for Fairview's potential liability. (See id.) These are examples of protected opinion work product. However, Nelson may be asked about his recollection of what questions OCR asked and what answers were given by the interviewees. (See id. at 19–20.) These are examples of ordinary work product. (See id. at 20.) The Court is confident that counsel for both parties can work within these parameters. (Id.)

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[2] The Court previously discussed Tailwind Sports I and its parallels to the present matter. (See July 26 Order at 17–18.)

1. Plaintiff's Objections [Doc. No. 106] are **SUSTAINED IN PART**.

2. Magistrate Judge Noel's Order dated May 18, 2016 [Doc. No. 105] is respectfully **REVERSED IN PART** as follows:

    a. Within three days of this Order, Defendant Fairview will produce the notes Eric Nelson took during the OCR interviews;

    b. Within fourteen days of this Order, Plaintiff Rumble may notice Eric Nelson for a deposition consistent with the terms of this Order and the Court's order dated July 26, 2016 [Doc. No. 114].


Dated:  August 29, 2016               s/Susan Richard Nelson
                                      SUSAN RICHARD NELSON
                                      United States District Judge